# Commonwealth of Massachusetts
## County of Middlesex
### The Superior Court

MIDDLESEX, SS.                                      CIVIL DOCKET# MICV2013-02006

Jawad Ayaz, Vinod Chandran, Plaintiffs
vs.
Livewire, Mobile, Inc., Defendant

## SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:

    You are hereby summoned and required to serve upon **Edward D Kutchin, Esquire**, plaintiff's attorney, whose address is **Berluti & McLaughlin 44 School Street, 9th floor,  Boston, MA 02108,** an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Woburn either before service upon plaintiff's attorney or within a reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

    **WE ALSO NOTIFY YOU** that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Middlesex County Superior Court, in Woburn on **06/05/2013, at 02:00 PM in Civil L2 - CtRm 740- 200 Trade Center, Woburn,** at which time you may appear and show cause why such application should not be granted.

    **Witness, Barbara J. Rouse,** Esquire, Chief Justice of the Superior Court, at Woburn, Massachusetts this 30th day of May, 2013.

...................................................................
                                               Clerk

### (AFFIX RETURN OF SERVICE ON BACK OF SUMMONS)

A true copy Attest
neb (?)man   Constable
Court Appointed Special Process Server
May 30, 2013

---

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130 cvcsumornot_2.wpd 921876 hrgpin macirobe

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. _____

JAWAD AYAZ AND VINOD CHANDRAN,
  Plaintiffs,

            v.

LIVEWIRE MOBILE, INC.,
  Defendant.

**VERIFIED COMPLAINT**

## PARTIES

1.  Plaintiff Jawad Ayaz ("Ayaz") is a citizen of the United States of America currently residing at 84, 3rd Main, Defence Colony, Indiranagar, Bangalore, India.

2.  Plaintiff Vinod Chandran ("Chandran" and, together with Ayaz, the "Plaintiffs") is a citizen of the United States of America currently residing at K60, Chaithanya Smaran, Whitefield Hoskote Road, Bangalore, India.

3.  Defendant Livewire Mobile, Inc. ("Livewire"), formerly known as NMS Communications Corporation, is a corporation organized under the laws of the State of Delaware and qualified to do business in the Commonwealth of Massachusetts. Livewire's corporate headquarters is located at One Monarch Drive, Littleton, County of Middlesex, Massachusetts.

## FACTS

4.  In February, 2006, both Ayaz and Chandran became employees of Livewire pursuant to the terms of an employment agreement by and between each such individual and Livewire.

5.    Immediately upon being employed by Livewire, each of the Plaintiffs was asked to serve
      and appointed by Livewire to the board of directors of its wholly-owned subsidiary, NMS
      Communications Pvt. Limited ("NMS India").

6.    Neither Ayaz nor Chandran was responsible for tax compliance matters relating to NMS
      India.

7.    NMS India was a corporation based in and organized under the laws of the Republic of
      India.

8.    Mr. Ayaz resigned his employment with Livewire, and his related director position with
      NMS India, on March 31, 2008.

9.    Mr. Chandran resigned his employment with Livewire, and his related director position
      with NMS India, on December 31, 2008.

10.   The Plaintiffs were members of the board of directors of NMS India for the entire
      duration of their employment with Livewire.

11.   In its 2006-07 financial year, NMS India had five directors in total only two of whom, the
      Plaintiffs, were domiciled in the Republic of India.  The remaining members of the Board
      of Directors were citizens of, and domiciled in, the United States of America.

12.   In its 2007-08 financial year, NMS India had four directors in total only two of whom,
      the Plaintiffs, were domiciled in the Republic of India.  The remaining members of the
      Board of Directors were citizens of, and domiciled in, the United States of America.

13.   Subsequent to the Plaintiffs' departure, NMS India discontinued all business operations
      in or about the summer of 2009.

14.   In or about 2010, well after the Plaintiffs had left the employ of Livewire, Indian tax
      authorities made an initial assessment that NMS India owed certain taxes for fiscal years
      2006-07 and 2007-08.

15.   The assessment against NMS India was made, in part, as a result of Livewire's failure
      submit, during the assessment process, documentary evidence such as invoices and bank
      statements to establish of the nature of the income received.

16.   After initially disputing these claims, at Livewire's behest, NMS India abandoned its
      defenses to these tax claims despite being specifically told by its tax advisors, in writing,
      that under applicable law doing so might expose NMS India's former directors to
      individual liability for the full amount of taxes owed.

17.   As a direct result of abandoning its defenses against such claims, a tax in the amount of
      INR35.4 million was assessed in December, 2011 (the "Tax Assessment").

18.   NMS India's tax liability to the Republic of India has continued to increase due to
      interest and penalties accruing with respect to the Tax Assessment.

19.   Commencing in July, 2012, each of the Plaintiffs started to receive numerous
      communications from the tax authorities of the Republic of India demanding payment of
      the Tax Assessment.

20.   The demands for payment have included warnings that their individual assets, including
      bank accounts, would be subject to liens and/or impoundment to pay the Tax Assessment.

21.   Following frantic communications from the Plaintiffs, Livewire and NMS India once
      again became engaged in the process.  On November 30, 2012, NMS India filed a belated
      appeal of the now-final Tax Assessment and sought a "condonation of the delay" (i.e. that
      the delay be excused and the appeal allowed to proceed despite such delay).

22.   The tax authorities of the Republic of India have not yet granted the condonation of delay or ruled on the appeal of the Tax Assessment.

23.   As of the date hereof, and after including a payment in the amount of $120,000 made by Livewire in January, 2013 in connection with the appeal of the Tax Assessment, the Plaintiffs' total potential exposure for taxes owed to the Republic of India as a result of their appointment to the board of directors of NMS India at Livewire's behest is believed to be approximately US$1,000,000.

24.   In addition, the Plaintiffs have incurred, and are continuing to incur, legal costs in both the Republic of India and in the United States to ensure that Livewire meets its obligations.

## COUNT I
### Declaratory Judgment

25.   The Plaintiffs repeat and reaver the allegations contained in the previous paragraphs as fully as though they were set out herein.

26.   The Plaintiffs state that an actual and serious controversy has arisen between the Plaintiffs and the Defendant regarding their respective rights, duties and obligations arising out of the Plaintiffs' former employment by Livewire and at common law.

27.   The Plaintiffs are entitled to declaratory relief regarding Livewire's obligations to the Plaintiffs in respect of their service on NMS India's board of directors.

### DEMAND FOR RELIEF

WHEREFORE, Livewire respectfully demands that this Honorable Court:

a.   Declare that the Plaintiffs are entitled to declaratory relief, including a declaratory judgment that Livewire is required to indemnify and defend each Plaintiff for any and all costs arising out of or relating to their appointment by Livewire to the board of directors of NMS India, including but not limited to any and all taxes,

4

fees, interests, penalties and other costs (including attorneys' fees) incurred in connection with the Tax Assessment; and

b.    Award such other and further relief as this Honorable Court deems met and just in these premises.

## COUNT II
### Breach of Covenant of Good Faith and Fair Dealing

28.    The Plaintiffs repeat and reaver the allegations contained in the previous paragraphs as fully as though they were set out herein.

29.    On the basis of the facts set forth above, Livewire willfully and materially breached the covenant of good faith and fair dealing implied in the employment agreements with each of the Plaintiffs and in its relationship with each Plaintiff.

30.    As a direct and proximate result of the conduct of Livewire, each Plaintiff has sustained and will sustain substantial damages.

### DEMAND FOR RELIEF

WHEREFORE, the Plaintiffs respectfully demands that this Honorable Court:

a.    Determine that the actions of Livewire constitute a breach of the covenant of good faith and fair dealing;

b.    Award each Plaintiff damages for breach of the covenant of good faith and fair dealings in the amount so determined including interest, costs, and reasonable attorneys' fees against Livewire; and

c.    Award such other and further relief as this Honorable Court deems meet and just in these premises.

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES IN THE COMPLAINT.

Dated:  May 31, 2013

Jawad Ayaz and Vinod Chandran
By their attorneys,

Edward D. Kutchin, Esq.
BBO No. 281920
Kerry R. Northup, Esq.
BBO No. 633016
Matthew Dunn, Esq.
BBO No. 654041
Berluti McLaughlin & Kutchin LLP
44 School Street, 9th Floor
Boston, MA 02108
(617) 557-3030

## VERIFICATIONS

I, Jawad Ayaz, hereby depose and state as follows: I have read the Verified Complaint filed herein and, knowing the contents thereof, have found that the allegations of fact set for therein are based on my own personal knowledge and are true, except as to those allegations based on information and belief, which I believe to be true.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 31st DAY OF MAY, 2013.

_____
Jawad Ayaz

I, Vinod Chandran, hereby depose and state as follows: I have read the Verified Complaint filed herein and, knowing the contents thereof, have found that the allegations of fact set for therein are based on my own personal knowledge and are true, except as to those allegations based on information and belief, which I believe to be true.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 31st DAY OF MAY, 2013.

_____
Vinod Chandran

\\BERMAC01\TMClientDocs\112.083\Verified Complaint.doc

## VERIFICATIONS

I, Jawad Ayaz, hereby depose and state as follows:  I have read the Verified Complaint filed herein and, knowing the contents thereof, have found that the allegations of fact set for therein are based on my own personal knowledge and are true, except as to those allegations based on information and belief, which I believe to be true.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 31st DAY OF MAY, 2013.

_____
Jawad Ayaz

I, Vinod Chandran, hereby depose and state as follows:  I have read the Verified Complaint filed herein and, knowing the contents thereof, have found that the allegations of fact set for therein are based on my own personal knowledge and are true, except as to those allegations based on information and belief, which I believe to be true.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 31st DAY OF MAY, 2013.

_____
Vinod Chandran

7

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. _____

```
                                        )
JAWAD AYAZ and VINOD CHANDRAN, )
      Plaintiffs,                       )
                                        )
v.                                      )
                                        )
LIVEWIRE MOBILE, INC.,                  )
      Defendant.                        )
                                        )
```

## PLAINTIFFS' EMERGENCY EX PARTE MOTION FOR INJUNCTIVE RELIEF AND A TEMPORARY RESTRAINING ORDER

NOW COME the Plaintiffs in the above-captioned matter, Jawad Ayaz and Vinod Chandran (together, the "Plaintiffs"), and hereby move this Honorable Court pursuant to Massachusetts Rule of Civil Procedure 65(a) for a temporary restraining order and a preliminary injunction commanding the Defendant, Livewire Mobile, Inc., to immediately deposit the sum of $1,200,000.00 of the proceeds generated by the impending sale of the company into the Court during the pendency of this lawsuit, and permanently thereafter. As grounds therefor, Plaintiffs rely on the accompanying Memorandum of Law, as well as their sworn affidavits, which together establish that the prerequisites for injunctive relief have been satisfied.

WHEREFORE, Plaintiffs request that this Court issue the temporary restraining order and a preliminary injunction as follows to maintain the status quo:

A.      The Defendant, Livewire Mobile, Inc., directly or indirectly, and its respective agents, employees, officers, directors, shareholders, accountants, attorneys and those parties in active participation with the Defendant and those parties acting at the direction or command of the Defendant, and those persons who have received notice of this order by personal service or

otherwise, are enjoined and ordered to refrain from withdrawing, spending, expending, assigning, pledging, selling, removing, paying, transferring, encumbering, conveying, concealing or otherwise alienating or in any way dissipating or diminishing or disposing of the proceeds of the sale or other disposition of the stock and/or assets of the Defendant up to the value of $1,200,000.00 during the pendency of this lawsuit; and

B.      The Defendant, directly or indirectly, and its respective agents, employees, officers, directors, shareholders, accountants, attorneys and those parties in active participation with the Defendant and those parties acting at the direction or command of the Defendant, and those persons who have received notice of this order by personal service or otherwise, are enjoined and ordered to refrain from entering into any type of contractual or business relationship of any kind to sell, transfer or convey ownership or possession of the business, assets or stock ownership of Livewire Mobile, Inc. until and unless all parties to any such transaction enter into a stipulation to be filed with this Honorable Court wherein it is agreed that $1,200,000.00 of the proceeds generated by such sale, transfer or conveyance shall be immediately deposited into Court during the pendency of this lawsuit.


[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

Respectfully submitted,

PLAINTIFFS,

Jawad Ayaz and Vinod Chandran,
By their attorneys,

Edward D. Kutchin, Esq.
BBO No. 281920
Kerry R. Northup, Esq.
BBO No. 633016
Matthew Dunn, Esq.
BBO No. 654041
Berluti McLaughlin & Kutchin LLP
44 School Street, 9th Floor
Boston, MA 02108
(617) 557-3030
ekutchin@bmklegal.com
knorthup@bmklegal.com
mdunn@bmklegal.com

Dated: May 30, 2013

\\BERMAC01\TMClientDocs\112.083\Emergency Mtn.PI.TRO 5.30.13.DOCX

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                   SUPERIOR COURT DEPARTMENT
                                                 CIVIL ACTION NO. _____

```
                                        )
JAWAD AYAZ and VINOD CHANDRAN,          )
        Plaintiffs,                     )
                                        )
v.                                      )
                                        )
LIVEWIRE MOBILE, INC.,                  )
        Defendant.                      )
                                        )
```

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EMERGENCY EX PARTE MOTION FOR INJUNCTIVE RELIEF AND A TEMPORARY RESTRAINING ORDER

Plaintiffs, Jawad Ayaz and Vinod Chandran (together, the "Plaintiffs"), have moved *ex parte* for a temporary restraining order and a preliminary injunction compelling the Defendant, Livewire Mobile, Inc. ("Livewire"), to deposit $1,200,000.00 of the proceeds generated by the impending sale of the company into the Court during the pendency of this lawsuit. Plaintiffs maintain that there are four reasons for the relief requested herein.

First, Plaintiffs contend that there is a substantial likelihood that they will prevail on the merits of their claim for a declaratory judgment in this action. More specifically, Plaintiffs assert that as agents acting for and at the direction of their principal (Livewire) it is obligated to indemnify and hold them harmless as a matter of law for any and all tax liability that the Republic of India may assess against them based solely on Livewire's appointment of Plaintiffs to the board of directors of its wholly-owned subsidiary – NMS Communications Pvt. Limited ("NMS India").[1]

---

[1] Under Indian law, such liability can be imposed upon Mr. Ayaz and Mr. Chandran pursuant to section 179(1) of the Income Tax Act of 1961.

Second, given Livewire's admitted "strained financial circumstances," Plaintiffs maintain that the company does not have sufficient funds on hand to satisfy NMS India's potential tax liability or to indemnify them in the event that the Indian tax authorities hold Plaintiffs vicariously liable for same. Therefore, in the event Livewire is sold, and the sale proceeds are disbursed, there will be no monies available to satisfy the potential tax assessment made by the Republic of India. Consequently, Plaintiffs assert that they will face irreparable injury if the relief requested herein is not granted because the Indian taxing authority will draw upon their personal bank accounts and liquidate their assets to satisfy NMS India's unpaid taxes.

Third, Plaintiffs contend that the threat of harm to them resulting from the Indian tax authorities' collection efforts greatly outweighs any harm that Livewire will suffer if the requested relief is granted. Rather, such an order will merely obligate Livewire to set aside funds with this Court to satisfy a tax liability likely to be assessed against Plaintiffs, but for which Livewire is truly legally responsible for.

Finally, Plaintiffs maintain that Livewire's (i) precarious financial position, (ii) refusal, despite prior requests, to voluntarily set aside funds in escrow to satisfy NMS India's potential tax liability or to indemnify Plaintiffs in the event of the denial of the appeal, and (iii) impending sale, together evidence a clear danger that Livewire, if notified in advance of this motion, will convey, remove or conceal the funds received from the impending sale of the company - leaving it with no means to satisfy any adverse tax ruling or to indemnify Plaintiffs. Accordingly, Plaintiffs assert that more than adequate grounds exist for this Court to grant the relief requested herein.

<u>FACTS</u>

In February 2006, Mr. Ayaz and Mr. Chandran became employees of Livewire, formerly known as NMS Communications Corporation. <u>See</u> Verified Complaint ("V.C.") at ¶ 5. In connection with their employment with Livewire, Mr. Ayaz and Mr. Chandran were appointed by Livewire to the board of directors of NMS India.[2] <u>See</u> V.C. at ¶ 6. They remained directors of NMS India for the duration of their employment with Livewire. <u>See</u> V.C. at ¶ 10. Mr. Ayaz simultaneously resigned both his employment and director position on March 31, 2008. <u>See</u> V.C. at ¶ 8. Mr. Chandran did the same on December 31, 2008. <u>See</u> V.C. at ¶ 9.

Sometime in 2010, the Republic of India's taxing authorities assessed certain tax liabilities against NMS India with respect to fiscal years 2006-2007 and 2007-2008. <u>See</u> V.C. at ¶ 14. NMS India initially disputed these tax claims, but ultimately abandoned its defenses to same at the behest of Livewire. <u>See</u> V.C. at ¶ 16. This was done despite Livewire being specifically informed in writing by its tax advisors that doing so might expose NMS India's former directors, including Mr. Ayaz and Mr. Chandran, to individual liability under local law. <u>Id.</u> As a result of Livewire's abandonment of NMS India's defenses to the tax claims, a final order was rendered against NMS India in the amount of approximately INR35.4 million in December, 2011 (the "Tax Assessment"). <u>See</u> V.C. at ¶ 17.

Beginning in July, 2012, and continuing thereafter, Mr. Ayaz and Mr. Chandran have received multiple notices from Indian tax authorities, have been summoned to multiple meetings and have been warned that they would be held personally liable, and their assets would be attached, if NMS India fails to fulfill its tax obligations. <u>See</u> V.C. at ¶¶ 19-20. On November 30, 2012, Livewire belatedly filed a late appeal to contest the Tax Assessment. <u>See</u> V.C. at ¶ 21. The Indian tax authorities have not yet ruled on this appeal. <u>See</u> V.C. at ¶ 22. As of the date

---

[2] NMS India was a corporation based in and organized under the laws of the Republic of India. V.C. ¶ 7.

3

hereof, and after including a payment in the amount of $120,000 made by Livewire in January, 2013 in connection with the appeal of the Tax Assessment, the Plaintiffs' total potential exposure for taxes owed to the Republic of India as a result of their appointment to the board of directors of NMS India at Livewire's behest is believed to be approximately US $1,000,000. See V.C. at ¶ 23. In addition, Plaintiffs have incurred, and are continuing to incur, legal costs in both the Republic of India and in the United States to ensure that Livewire meets its obligations. See V.C. at ¶ 24.

During subsequent communications with Plaintiffs regarding the Tax Assessment, Livewire's senior personnel made it clear to Mr. Ayaz that the company was not a financially strong corporation. See Affidavit of Jawad Ayaz ("Ayaz Aff.") at ¶ 5. More specifically, Livewire's attorney, in response to a demand letter sent by Plaintiffs' attorney to demand that Livewire meet its obligations to Plaintiffs, stated that the corporation was financially unstable, noting that the company's publicly traded stock was traded over the counter, via "pink sheets," that its publicly available audited reports for fiscal year 2011 and most recent quarterly reported, issued September 26, 2012 "reveal[ed] significant current operating losses and detail a number of steps that the company has been taking to reduce its expenses." Ayaz Aff. at ¶ 5. Significantly, Livewire's counsel described the current situation as one entailing "strained financial circumstances." Id.

As stated above, the Indian tax authorities have still not rendered a decision on the appeal. See V.C. at ¶ 22. Plaintiffs have a real concern that if the appeal is denied, and Livewire does not pay the entire amount of Tax Assessment in a timely manner, then the Indian tax authorities will immediately attach and levy on their personal assets in order to satisfy this outstanding liability. Ayaz Aff. at ¶¶ 6-7. Moreover, Plaintiffs have learned that Livewire is in

4

active negotiations to sell all or substantially all of its assets, business and operations to a corporation based in the Republic of India with international operations. Ayaz Aff. at ¶ 3. This is extremely disconcerting because if Livewire is sold, and the sale proceeds are disbursed, there will be no monies available to satisfy the Tax Assessment against NMS India and for which, under the laws of the Republic of India, Plaintiffs are required to pay as a result of their serving as directors of that company at the direction and behest of their former employer, Livewire. Ayaz Aff. at ¶ 7.

Based on this threat of harm, Plaintiffs filed their Verified Complaint with this Court on May 30, 2013. In it they seek, in part, a declaratory judgment that Livewire is legally obligated to indemnify them for the Tax Assessment, and all costs and expenses that Plaintiffs have incurred relating to that matter. See V.C. at ¶¶ 25-26.

## ARGUMENT

I.   **Standard for Issuance of a Preliminary Injunction**

The standard for the issuance of a preliminary injunction is undoubtedly well known to this Court. It requires the moving party to demonstrate (1) that there is a likelihood that it will prevail on the merits of its claims; (2) that it will face irreparable injury if the injunction is not granted; and (3) that such injury outweighs any harm that the opposing party will suffer in the requested injunction enters. *Packaging Industries Group, Inc. v. Chaney*, 380 Mass. 609, 612-20 (1980). The application of these legal standards principally involves a concurrent evaluation of a party's claim of injury and its chance of success on the merits. *Hull Municipal Lighting Plant v. Massachusetts Municipal Wholesale Electric Co.,* 399 Mass. 640, 642 (1987); *see also Packaging Industries Group, Inc.,* 380 Mass. at 617. The issuance of a preliminary injunction

lies within the sound discretion of the trial court. *Boston Teachers Union, Local 66 v. City of Boston*, 382 Mass. 553, 566 (1981).

Applying this standard to the instant case warrants the granting of the requested relief to the Plaintiffs. As is further explained below, the Plaintiffs are very likely to succeed on the merits of their claim for indemnification in this action. Moreover, they have provided proof that they have sustained, and will continue to sustain, irreparable injury if their request for injunctive relief is not granted. Compare these factors to the reality that Livewire is in no danger of suffering any harm whatsoever if an injunction is granted in this instance. As Plaintiffs have satisfied each of the elements for the issuance of a preliminary injunction, it is entitled to an order commanding Livewire to deposit $1,200,000.00 of the proceeds derived from the impending sale of the company into the Court during the pendency of this lawsuit.

## A. **Plaintiffs Have a Strong Likelihood of Success on the Merits of their Claim for Indemnification in this Action.**

Indemnity is the right of one who has personally committed no wrongdoing, but who has paid or been required to pay the liability of a wrongdoer or tortfeasor, to compel a complete reimbursement from the other. *Gray v. Boston Gas Light Co.*, 114 Mass. 149, 154 (1873); *Stewart v. Roy Bros., Inc.*, 358 Mass. 446, 458 (1970); *Ford v. Flaherty*, 364 Mass. 382, 385– 386 (1973); *Elias v. Unisys Corp.*, 410 Mass. 479, 482 (1991). It is a bedrock principle of the law of agency that an agent who has incurred an obligation or sustained a loss within the scope of his employment has a right to be indemnified by his principal. *Central Trust Co. v. Rudnick*, 310 Mass. 239, 246 (1941); see also *Hornblower v. Abbot*, 252 Mass. 291, 299 (1925); *Evans, Coleman & Evans v. Pistorino*, 245 Mass. 94, 99 (1923). As the United States Supreme Court itself stated, "[i]t is a well-established principle, which pervades the whole law of principal and agent, that the principal is bound to indemnify the agent against the consequences of all acts

6

done by him in the execution of his agency, or in pursuance of the authority conferred upon him, when the actions or transactions are not illegal." *Bibb v. Allen*, 149 U.S. 481, 498 (1893); *see also Greene v. Goddard*, 50 Mass. 212, 222-223 (Ma. 1845).

Similarly, when an agent, at the express or implied request of his principal, expends his own funds for the benefit of the principal, he is entitled to reimbursement. See Restatement, 2d, Agency, § 438, Comment b and § 439(a), (b), (e) (stating agent entitled to reimbursement when he expends his own funds for the benefit of principal); see also Restatement, 3d, Agency, § 8.14 and Comment b. The basis of the principal's duty to indemnify is that the venture belongs to the principal and if the profits will be his, so should be the expenses. *Admiral Oriental Line v. United States*, 86 F.2d 201 (2d Cir. 1936).

Here, Plaintiffs have a strong likelihood of success on the merits of their claim for indemnification from Livewire. It cannot be disputed that the Tax Assessment that the Indian tax authorities have threatened to levy against them was incurred by NMS India while Plaintiffs were serving as directors of that company at the behest of, and solely for the benefit of, Livewire. Consequently, Livewire has an legal obligation to indemnify Mr. Ayaz and Mr. Chandran - not only for the Tax Assessment, but also for all costs reasonably relating thereto. *Central Trust Co. v. Rudnick*, 310 Mass. at 246; Restatement, 2d, Agency, § 438, Comment b and § 439(a), (b), (e).

## B. **Plaintiffs have Established that They Will Suffer Irreparable Harm if Funds from the Impending Sale of Livewire Are Not Deposited Into the Court.**

Livewire admits that it is operating under "strained financial circumstances," and Plaintiffs are aware of its efforts to sell the company. This suggests that Livewire presently does not have sufficient funds on hand to either (i) satisfy the Tax Assessment, or (ii) to indemnify Plaintiffs in the event that the Indian tax authorities hold them vicariously liable for same. Moreover, there is a real threat that in the event Livewire is sold, and the sale proceeds are

disbursed, that there will be no monies available to anyone to satisfy the Tax Assessment. In that instance, Plaintiffs will face irreparable injury because the Indian tax authorities will draw upon their personal bank accounts and liquidate their assets to satisfy the unpaid balance. This would cause Plaintiffs to experience the type of financial harm which cannot be remedied by an award of money damages. However, this threat of irreparable injury can easily be avoid by simply ordering Livewire to pay over $1,200,000.00 of the funds that it derives from the sale of the company into this Court. Thereafter, those funds can be used to pay off the Tax Assessment, and Plaintiffs' related costs and expenses, and any remaining amounts can be released to Livewire's creditors and shareholders.

### C.  The Balance of the Equities Favors Entry of Injunctive Relief.

In addition to the consideration of irreparable injury and the likelihood of success on the merits, the Court must weigh the competing interest of the opposing party when deciding whether to issue a preliminary injunction. See *Commonwealth v. Mass. CRINC*, 392 Mass. 79, 466 N.E. 2d 792 (1984). In this balancing test, the Supreme Judicial Court has said that what matters as to each party is not the raw amount of irreparable harm the party might suffer, but rather the risk of such harm in light of the parties' success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue. *Packaging Industries Group, Inc.*, *supra* at 617.

Here, the balance tips decidedly in Plaintiffs' favor. Awarding the relief sought by Plaintiffs merely secures the availability of funds that Livewire is legally obligated to pay to the Indian tax authorities and preserves the *status quo* by insuring that any tax liability payment can be made without the Indian tax authorities attaching Plaintiffs' personal bank accounts and liquidating their assets. Livewire cannot legitimately suggest otherwise. Rather, the only

8

"harm" that it can point to is a temporary delay in disbursing any remaining escrowed funds to its creditors and shareholders. Compared with the harm facing Plaintiffs, it is clear that the balance of the equities decidedly tips in their favor.

Moreover, because Livewire has created this controversy (i.e. by refusing to voluntarily place the requested sum into an escrow account to be used solely in the event that NMS India's appeal is denied and the Indian authorities demand payment of the outstanding tax liability from Plaintiffs) and its resultant threat of harm to the Plaintiffs, the balance of the equities requires that the injunction be issued. This, combined with Plaintiffs showing of success on the merits, illustrates that this Court should issue the temporary restraining order and preliminary injunction sought herein.

## CONCLUSION

In view of the foregoing, it is imperative that in order to protect the Plaintiffs and prevent them from suffering irreparable harm that this Honorable Court grant their Motion for (1) a Temporary Restraining Order, and (2) Preliminary Injunction. The requested injunctive relief is reasonable and necessary as security for the enforcement of a judgment that Plaintiffs expect to recover on their indemnification claim in this action.

WHEREFORE, it is respectfully submitted that this Honorable Court issue a preliminary injunction compelling Livewire to deposit $1,200,000.00 of the proceeds generated by the impending sale of the company into the Court during the pendency of this lawsuit.

9

Respectfully submitted,

PLAINTIFFS,
Jawad Ayaz and Vinod Chandran,
By their attorneys,

Edward D. Kutchin, Esq.
BBO No. 281920
Kerry R. Northup, Esq.
BBO No. 633016
Matthew Dunn, Esq.
BBO No. 654041
Berluti McLaughlin & Kutchin LLP
44 School Street, 9th Floor
Boston, MA 02108
(617) 557-3030
ekutchin@bmklegal.com
knorthup@bmklegal.com
mdunn@bmklegal.com

Dated: May 30, 2013

\\BERMAC01\TMClientDocs\112.083\Memo Mtn. TRO - DRAFT VO.2 5.29.13.DOCX

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                          SUPERIOR COURT DEPARTMENT
                                        CIVIL ACTION NO. _____

---

JAWAD AYAZ AND VINOD CHANDRAN,
   Plaintiffs,


               v.

LIVEWIRE MOBILE, INC.,
   Defendant.

---

## AFFIDAVIT OF JAWAD AYAZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

This Affidavit is made by Jawad Ayaz and is submitted by Plaintiffs Jawad Ayaz and Vinod Chandran in support of their Motion for Preliminary Injunction.

I, Jawad Ayaz, on oath do hereby depose and say as follows:

1.     I am a resident of Bangalore, Republic of India.

2.     For the reasons set forth in the Verified Complaint, I believe the Defendant is legally responsible to pay any and all damages and costs incurred by me in connection with tax claims asserted against me personally by the Republic of India arising solely out of my appointment by Livewire to the board of directors of Livewire's Indian subsidiary, NMS Communications Pvt. Limited ("NMS India").

3.     After initially disputing the tax claims assessed against NMS India, Livewire abandoned its defenses against these tax claims. This course of conduct was pursued by Livewire despite being told in writing by its tax advisors that doing so might expose NMS India's former directors to individual liability under local law. A copy of an email, dated December 11, 2010, from Livewire's tax advisors to, among others, Todd Donahue, the Chief Financial Officer of Livewire, is attached hereto as Exhibit A. The second enumerated paragraph of this email states in relevant part that:

> "In case you decide not to appeal and take a position that the financial position of the company does not support a tax payment, then there is a high likelihood that the tax authorities will try to recover the dues from the directors (joint and several liability)."

4.     Because NMS India/Livewire failed to pursue the appeal of the tax liability assessments in a timely fashion, a final order was rendered against NMS India and, since Livewire chose not to pay the assessment, the Indian authorities then pursued these claims against me. Since July, 2012, I have received multiple notices from Indian tax authorities, have been summoned to multiple meetings and have been warned that I would be held personally liable and my assets would be attached if NMS India fails to fulfill its outstanding tax obligations. A copy of one such notice, dated July 31, 2012, is attached hereto as Exhibit B.

5.     After receiving a demand letter for indemnification from my attorney in December of 2012, Livewire belatedly filed a late appeal to contest the tax liability. While communicating with Livewire regarding the tax assessment, Livewire's senior personnel made it clear to me that it was not a financially strong corporation. Furthermore, Livewire's attorney, in response to a demand letter sent by my attorney to demand that Livewire meet its obligations to me, stated that the corporation was financially unstable, noting that the company's publicly traded stock was traded over the counter, via "pink sheets," that its publicly available audited reports for fiscal year 2011 and most recent quarterly reported, issued September 26, 2012 "reveal[ed] significant current operating losses and detail[ed] a number of steps that the company has been taking to reduce its expenses." Livewire's counsel described the current situation as one entailing "strained financial circumstances." She specifically stated that "[g]iven the company's stained financial circumstances, it is entirely understandable that Livewire has had to prioritize the use of its cash and to make what are sometimes difficult determinations as to how its resources should best be utilized".

6.     By email correspondence dated December 3, 2012, Livewire's Indian tax advisors described NMS India as having "likely liability . . . of about USD $1.2 million." A copy of such correspondence is attached hereto as Exhibit C.

7.     As of the present date, the Indian Tax Authorities have not rendered a decision on the appeal. I am very concerned that if the appeal is denied and Livewire does not pay the entire amount of tax assessed in a timely manner, then the Indian authorities will as per the laws of the Republic of India immediately attach and levy on my personal assets in order to satisfy this outstanding liability. As a result of this concern, my attorney sent a follow-up letter to Livewire's attorney on February 26, 2013, requesting that in order to protect me in the event of the denial of the appeal, Livewire do the following:

        a.     place the sum of $915,000 US dollars into an escrow account to be used solely in the event that the appeal is denied and the Indian authorities demand payment of the outstanding tax liability;

        b.     confirm in writing that it would indemnify and hold me harmless from any and all claims asserted by the Indian government against me as a result of any denial of the pending tax appeal, including reasonable attorney's fees;

       c.     file and pursue a claim against Livewire's directors and officers insurance policy; and

       d.     reimburse all legal fees incurred by me to retain my law firm to pursue my indemnity rights.

8.     Three weeks later Livewire's attorney finally responded in writing by refusing to escrow any money but said Livewire would abide by its commitment to defend me and would "abide by its legal requirements."

9.     I am informed and believe and therefore aver that Livewire is in active negotiations to sell all or substantially all of its assets, business and operations to OnMobile Global Limited, a publicly traded telecommunications corporation based in the Republic of India with international subsidiaries, affiliates and operations.

10.     In the event Livewire is sold and the sale proceeds are disbursed, there will be no monies available to satisfy any tax assessment made by the Republic of India against NMS India and for which, under the laws of the Republic of India, I am required to pay as a result of my serving as a director of that company at the direction and behest of my former employer, Livewire.

11.     Based on my prior employment with Livewire and knowledge of its operations and precarious financial condition, and its prior refusal to place some money into escrow in the event of the denial of the appeal, there is a clear danger that if the injunctive relief requested in the Motion is not granted, any funds received by the entity or its shareholders will be dissipated or concealed and, therefore, Livewire would have no means to satisfy any adverse tax ruling or its indemnification obligations to me.

12.     The injunctive relief now sought is necessary and reasonable as security for the judgment which the Plaintiffs expect to recover from the Defendant.

13.     Considering the facts involved herein, there is a substantial likelihood that the Plaintiffs will recover a judgment, including interest and costs, in an amount equal to or greater than the amount sought to be enjoined herein.

14.     I know of no liability insurance which the Defendant has available to satisfy any judgment the Plaintiffs expect to recover from the Defendant.

Subscribed and sworn to under the penalties of perjury this 31st day of May, 2013.

_____

Jawad Ayaz

Exhibit A

**From:** Sanath Ramakrishna [mailto:Sanath.Ramakrishna@in.gt.com]
**Sent:** Saturday, December 11, 2010 1:30 AM
**To:** 'Keith Maffiore'
**Cc:** 'Todd Donahue'; 'Fatema Hunaid'; 'Shashi'; 'Nanjundaswamy TC'; 'Sreejith Kuniyil'; 'Bharath HP'
**Subject:** RE: NMS India_TP assessment AY 2007-08
**Importance:** High

Keith:

Broadly you have two options (other than of course paying up the amount as and when a demand is received). Fatema will send a detailed mail (we are proceeding for a strategy meet and hence there may be some delay in sending this), but in the meantime, I am just summarising so that you can initiate internal discussions as appropriate.

1.    Proceed with an appeal to the next higher authority. Under this option, you have two alternative forums for appeal:

a.    Dispute Resolution Panel: This is a parallel appeal mechanism. The advantage is that orders by a DRP are not appealable by the income-tax authorities while you will still have an option to appeal to the Tribunal. You may not be required to make any deposit of taxes demanded till the matter is settled by the DRP. However, from a practical perspective, the DRP comprises mainly of Commissioner of Income-taxes and hence it is not guaranteed that you will receive a favourable order although we believe that you have a good case to defend since the adjusted mark-up by the tax authority is only about 1+%. It is also a time bound process which has both pros and cons i.e. it will be settled within a fixed time frame or given the time limit, the DRP could hurriedly pass a 'single line order accepting the tax authority's position' without going into the details.

b.    Commissioner of Income-tax (Appeals): This is a normal process of appeal and there is a likelihood the tax authorities may require you deposit some portion of the demand prior to appealing which you could contest citing the financial situation. The decisions of Commissioner of Income-tax (Appeals) are appealable by both parties in the Tribunal.

2.    In case you decide not to appeal and take a position that the financial position of the company does not support a tax payment, then there is a high likelihood that the tax authorities will try to recover the dues from the directors (joint and several liability). In such a case, the onus will be on the directors (and not on the tax officer) to prove that there was no gross neglect, misfeasance or breach of duty on the part of the Directors in relation to the affairs of the Company.

We are still trying to complete the normal tax assessment (audit) but the information flow from Pradeep has been quite difficult. We have collated some information from the audit files. Shashi will send an update on this.

Hope this helps.

**Sanath Ramakrishna | Partner, Tax & Regulatory Services**
Walker, Chandiok & Co
WINGS First Floor, 16/1, Cambridge Road, Ulscor, Bengaluru 560008, India
**M** +91 98861 86860 | **D** +91 80 4243 0802 | **T** +91 80 4243 0700 | **F** +91 80 4126 1228 | **E**
Sanath.Ramakrishna@in.gt.com | **W**http://www.wcct.in

The information contained in this e-mail is private & confidential and may also be legally privileged. While the information contained in this document and any of its attachments is provided for the assistance of the recipient, the same should not be relied upon as a substitute for professional, technical or legal advice, unless it is sent after being duly signed by a partner of our firm in harcopy. The contents of this mail and any of its attachments are subject to change without notice. If you are not the intended recipient of this mail, please notify us -preferably by e-mail- and do not read, copy or disclose the contents of this message to anyone. Whilst we have taken reasonable precautions to ensure that any attachment to this e-mail has been swept for viruses, e-mail communications cannot be guaranteed to be secure or error free, as information can be corrupted, intercepted, lost or contain viruses. We do not accept liability for such matter or their consequences.

f

**Exhibit B**

*By Speed post*



GOVERNMENT OF INDIA
INCOME TAX DEPARTMENT
OFFICE OF THE TAX RECOVERY OFFICER, RANGE- 12.
#14/3, 4th Floor, Rashtrothana Bhavan, Opp: RBI, Nrupatunga Road, Bangalore-560001.

F.No.482/TRO/R-12/2012-13.                                     Date: 31-7-2012.

To,
Mr. Jawad Ayaz
Managing Director, M/s.NMS Communications
No.84, 3rd Main, Defence colony, Indiranagar
Bangalore-560 038.

Sir,

    Sub: ITCP-I dated 12-7-2012 in the case of M./s.NMS Communications
         (P) Ltd.,- Asst.years 2007-08 and 2008-09-Reg.
    Ref: Your letter dated 23-7-2012.
                    *****

    Please refer to the above.

2.    As per Form-32 submitted to ROC, you were the Managing Director of the company upto the Financial Year ending 31-3-2008 relevant for Asst.Year 2008-09. The recovery proceedings in the case of M/s.NMS Communications P Ltd., relates to Asst.Years 2007-08 amounting to Rs.1,94,06,097/- and Rs.1,64,37,949/- for Asst.year 2008-09, during which period you served as Managing Director of the company.

3.    As per provisions of the Act, the directors are liable for payment of taxes of the company in case of default by the company. The provisions of section 179(1) of the Income Tax Act is extracted for your information as follows:

> *..Where any tax due from a private company in respect of any income of any previous year or from any other company in respect of any income of any previous during which such other company was a private company cannot be recovered, then every persons who was director of the private company at any time during the relevant previous year shall be jointly and severally liable for the payment of such tax.....*

    Accordingly, since you are one of the Managing directors of M/s.NMS communications (P) Ltd., Bangalore, the payment of outstanding tax in the case of the company for Asst.year 2007-08 and 2008-09 is brought to your notice for necessary action.

4.    Please note, in case of any non-compliance with regard to payment of the taxes as stated above, recovery measures as per provisions of Sec.222 to 229 of the Income-Tax Act 1961 will be invoked in your case in the capacity of Managing Director of the company.

5.    Your reply to the above is required to be furnished on or before **6-8-2012.**

                                                            Yours faithfully,

                                                            (सुनीता किशोर)
                                                            (SUNITHA KISHOR)

**<u>Exhibit C</u>**

\\BERMAC01\TMClientDocs\112.083\Affivait_PI Motion_Ayaz.DOC

From: "Jatin Christopher" <christopher@jcssglobal.com>
Subject: FW: NMS - approach
Date: December 3, 2012 10:30:09 PM GMT+05:30
To: "Jawad Ayaz" <jawad@20north.com>, "Vinod Chandran" <vinod@20north.com>

-----Original Message-----
From: Jatin Christopher [mailto:christopher@jcssglobal.com]
Sent: Monday, December 03, 2012 10:30 PM
To: 'Todd Donahue'
Cc: 'Mahaveer Jain'
Subject: NMS - approach
Importance: High

Dear Todd:

Mahaveer has been guiding us on legal / technical matters of the case.

From a business side of things, I would like to share my considered thoughts
with you for making these decisions.

At the outset, it is not permissible for any tax officer to consider a
one-time settlement proposition in the present cases. Responding to each
year's tax assessment and appeals is the only way ahead. This way you will
end up with a final tax bill between zero and $300k (worst case) for all 3
years.

This as against a total assessed/likely liability for 3 years of about USD
1.2 million (Mahaveer's worksheet has the exact numbers). If we were to
insist and seek a 'total tax bill' for all years, the only way that might
(theoretically) be possible is if they were to hasten all ongoing
assessments (Year 3, penalty, etc.) and send us a summed-up letter and
expect at the very least an interim payment in excess of 50 percent of 1.2
million. Even this would not yield any finality; so I would urge you to
abstain from this route.

Based on my experience in handling such matters, I strongly urge you to
consider a year-by-year approach. Also, for filing these yearly appeals,
etc., all we will need is a Director to be available for signing documents
as has been done recently.

Now, the discussions with the recovery officer regarding a payment towards
TP tax (Rs.4.2 mil) in return for a "stay" on other demands, pending appeal
and also to serve 2 purposes:
1. Drop any action against directors like attaching their personal assets,
etc.
2. Encourage favorable handling of the appeal filing delay (condonation) and
the appeal itself

Stay applications are not typically entertained without 'any' associated
payment. And a 'stay order' will specify an amount pre-agreed with the
Company. So, if we want a stay then we need to discuss and make a commitment
to pay and then follow it with a deposit of the agreed sum.

If the Company is firm that it won't make a TP tax payment in return for a
stay, I would like to encourage all Directors (past and present) to
immediately approach the High Court of Karnataka to file an application
against the tax office for a 'cease and desist' direction in respect of the
personal tax recovery notices.

Lastly, you might like to know that it is not uncommon for foreign companies
to 'divest' from subsidiaries (including the tax liabilities) where there
are such ongoing tax disputes to established receivership service providers
who will agree to carry on and manage the subsidiary as their own with the
tax liability. They will provide suitable indemnities (that can be drafted
by us) to the exiting stakeholders. This will require a payment to the
service provider that is typically based on their view of the 'realistic'
tax liability plus a mark-up. My estimate is that it could be 30-40% of our
outstanding tax liability. I bring this up to you because this seems to
have all the trappings of finality.

Please do consider these thoughts while making a decision.

I am available to discuss as needed, my cell phone no. is +91-98804 88600.

Kind regards,
Jalin


PS.  This matter is of utmost urgency in view of the implementation
dependencies involved once a firm decision is made.  But, I know you know
this so I will leave it to you to revert expeditiously.

Commonwealth of Massachusetts
County of Middlesex
The Superior Court

CIVIL DOCKET # MICV2013-02006-L2

Courtroom Civil L2 - CtRm 740- 200 TradeCenter, Woburn

RE: **Ayaz et al v Livewire, Mobile, Inc.**

TO:    Edward D Kutchin, Esquire
       Berluti & McLaughlin
       44 School Street
       9th floor
       Boston, MA 02108

### SCHEDULING ORDER FOR A TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue by 05/14/2016

| STAGES OF LITIGATION | DEADLINES | | |
|---|---|---|---|
| | SERVED BY | FILED BY | HEARD BY |
| Service of process made and return filed with the Court | 08/28/2013 | 08/28/2013 | |
| Response to the complaint filed (also see MRCP 12) | | 09/27/2013 | |
| All motions under MRCP 12, 19, and 20 | 09/27/2013 | 10/27/2013 | 11/26/2013 |
| All motions under MRCP 15 | 07/24/2014 | 08/23/2014 | 08/23/2014 |
| All discovery requests **and depositions** served and non-expert depositions completed | 05/20/2015 | | |
| All motions under MRCP 56 | 06/19/2015 | 07/19/2015 | |
| Final pre-trial conference held and/or firm trial date set | | | 11/16/2015 |
| Case shall be resolved and judgment shall issue by **05/14/2016** | | | **05/14/2016** |

- The final pre-trial deadline is not the scheduled date of the conference.
- You will be notified of that date at a later time.
- Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 05/30/2013

Michael A. Sullivan
Clerk of the Court

Telephone: 781-939-2754

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                     SUPERIOR COURT DEPARTMENT
                                                   CIVIL ACTION NO. _____

_____ )
                            )
JAWAD AYAZ and VINOD CHANDRAN, )
     Plaintiffs,            )
                            )
v.                          )
                            )
LIVEWIRE MOBILE, INC.,      )
     Defendant.             )
_____ )

## PLAINTIFFS' MOTION FOR APPOINTMENT OF
## SPECIAL PROCESS SERVER

NOW COME the Plaintiffs in the above-captioned matter, Jawad Ayaz and Vinod

Chandran (together, the "Plaintiffs"), in and respectfully moves pursuant to Mass. R. Civ. P.

4(c), that this Honorable Court appoint Michael B. Fixman as special process server, who is

qualified, over the age of 18, knowledgeable in the service of process, and who is disinterested

and not a party in this action.  Michael B. Fixman should also be appointed because of their

special knowledge in the service of process, long experience and the urgency of this matter.

Plaintiffs request that the Court authorize the special process server to serve any and all

process necessary or appropriate to enforce all aspects of the Order on Plaintiffs' Emergency Ex

Parte Motion for Injunctive Relief and a Temporary Restraining Order, including, but not limited

to the authority to take any and all action necessary to take physical possession of and to deposit

$1,200,000.00 of the proceeds generated by the impending sale of the company into the Court

during the pendency of this lawsuit.