UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
JAWAD AYAZ and VINOD CHANDRAN  )
                               )
         Plaintiffs,           )     Civil Action No. 13-cv-11330
                               )
      v.                       )
                               )
LIVEWIRE MOBILE, INC.          )
                               )
         Defendant.            )
                               )
_____)
```

## MEMORANDUM AND ORDER

June 27, 2013

Saris, C.J.

### I. INTRODUCTION

Plaintiffs Jawad Ayaz and Vinod Chandran have moved for a
preliminary injunction under Federal Rule of Civil Procedure 65
to compel Defendant Livewire Mobile ("Livewire") to set aside
$2 million in escrow from the proceeds of a sale of Livewire's
assets, which is scheduled to close on June 30, 2013. Plaintiffs
served on the board of directors of a wholly-owned subsidiary of
Livewire. They allege that they are entitled to a declaratory
judgment regarding their right to indemnity from Livewire for
Indian tax liabilities that may be personally attributed to them
under Indian law. Because of the impending sale of virtually all
of Livewire's assets, Plaintiffs ask for a preliminary injunction

1

to preserve the remedy of indemnity. After hearing, the Court **ALLOWS** Plaintiffs' motion for a preliminary injunction.

## II. FACTUAL BACKGROUND

Livewire is Delaware corporation that provides managed service solutions for mobile network operators, consumer device manufacturers, media companies and content providers. On February 24, 2006, Livewire acquired Openera Technologies, Inc., a Delaware corporation with operations based in India and Openera's wholly-owned subsidiary, Openera Technologies Pvt. Ltd., which became known as NMS India Pvt. Ltd. after the acquisition ("NMS India").[1] Prior to the acquisition, Jawad Ayaz was the Chief Technology Officer and a director of both Openera and NMS India and Vinod Chandran was the Chief Operating Officer and also a director of both Openera and NMS India. Following the acquisition, both Ayaz and Chandran served as directors of NMS India.

Ayaz and Chandran also entered into employment agreements with Livewire that were to be "governed by and construed and enforced in accordance with the laws of India." Decl. Gerritsen in Supp. of Def.'s Opp. to Emer. Mot., at 5; Id. at Ex. A and B. Notably, the contract is silent on the issue of indemnification. In their roles at NMS India, neither Ayaz nor Chandran was

---

[1] Prior to December 2008, Livewire was known as NMS Communications Corporation.

2

responsible for tax compliance matters relating to NMS India. V. Compl., ¶ 6.

In 2008, Ayaz and Chandran resigned as employees of Livewire and as directors of NMS India. Subsequent to their departure, NMS India discontinued all business operations in India around mid-2009. NMS India is now a dormant entity with no local operations.

In 2010, NMS India received notification that the Indian government had assessed tax liabilities against it for the fiscal tax years 2006-2007 and 2007-2008. NMS India had 30 days to contest these assessment orders. NMS initially disputed these liabilities, but abandoned its defenses prior to any resolution or payment of the amount due. Based in part on NMS's failure to follow through during the assessment process, the Deputy Commission of Income Tax issued "Final Assessment Orders" against NMS India for the fiscal year 2006-2007 in the amount of $330,000 on October 28, 2011 and for the fiscal year 2007-2008 in the amount of $320,000 on February 9, 2012.

After the Final Assessment Orders were issued, Ayaz and Chandran received letters from the Income Tax Department Government of India dated July 31, 2012, notifying them, "As per provisions of the [Income Tax] Act, the directors are liable for payment of taxes of the company in case of default by the company . . . Please note, in case of any non-compliance with regard to payment of the taxes as stated above, recovery measures . . .

3

will be invoked in your case in the capacity of Managing Director of the company." Aff. Chandran in Supp. of Pls.' Mot. for Inj. Relief, Ex. B. These letters were also received by other former directors. Decl. Gerritsen in Supp. of Def.'s Opp. to Emer. Mot., ¶ 11. However, Ayaz and Chandran are the only former directors who currently reside in India. TRO Hr'g Tr. 48:17-19, June 5, 2013.

NMS has also received notification that it owes approximately $90,000 in taxes for the fiscal year ending March 31, 2009. Because NMS India filed its appeal to this assessment in a timely manner, its direct appeal is currently pending before the Indian Court. However, with regard to the 2006-2007 and 2007-2008 fiscal years, since Livewire missed the deadline to contest the assessments, it had to file an "Application for Condonation of Delay", requesting that the court hear the merits of the tax assessment appeal despite its late filing.[2] Chandran Aff. in Supp. of Pls.' Reply, ¶ 14. NMS India filed this on November 30, 2012. JCSS Consulting Private Limited ("JCSS"), an accounting and regulatory firm engaged by Livewire to appeal the Indian tax assessments, estimated that a final appeal of all tax assessments

---

[2] Based on communications with the consulting firm hired by Livewire to handle the appeal and Plaintiffs' legal counsel, Plaintiffs assert that there is an approximately 10-20% chance that the Request for condonation will be denied. Chandran Aff. in Supp. of Pls.' Reply, ¶ 15. That is, there is a substantial likelihood the tax appeal will be heard on the merits.

would be rendered slightly more than two years from the appeal date.

Both a denial of the Condonation of Delay and substantive rulings on the tax assessment may be appealed to the jurisdictional High Court. Plaintiffs assert that the High Court typically requires that a portion of the tax assessment (including applicable penalties and interest) be paid into court before permitting the case to proceed and that "typically the amount required to be paid is 50% of the tax assessment at issue . . . this amount is an actual cash deposit, and not a bond." Narasappa Aff. in Supp. of Pls.' Reply, ¶ 8. Defendant points out that a 50% deposit represents the worst case scenario. Def.'s Opp. to Mot. for Leave to File Reply at 2. After the Court enters judgment, NMS must pay the assessed amount within 30 days. If it does not, the Indian government will be entitled to collect the full amount of the assessment, including interest and penalties, from NMS India's former directors at which point the former directors may avoid liability only if they affirmatively show that they did not engage in any "gross neglect, misfeasance or breach of duty" under Indian Income-Tax Act § 179.[3]

---

[3] Indian Income-Tax Act, 1961, § 179 reads in full: "Notwithstanding anything contained in the Companies Act, 1956 (1 of 1956), where any tax due from a private company in respect of any income of any previous year or from any other company in respect of any income of any previous year during which such other company was a private company cannot be recovered, then, every person who was a director of the private company at any time during the relevant previous year shall be jointly and

Livewire has committed to challenging the substantive tax
assessments. In January 2013, Livewire paid approximately
$122,000 to the India Tax Department as a deposit on a portion of
outstanding tax assessments. This payment was made as a condition
required to allow NMS India to have its tax appeals heard and to
secure a stay of any collections efforts. Decl. Gerritsen in
Supp. of Def.'s Opp. to Emer. Mot., ¶ 12. Ex. C. Further,
Livewire has asserted that its directors and officers insurance
policy with Chartis Insurance will likely not cover Ayaz and
Chandran's individual liability if the Indian government pursues
Ayaz and Chandran individually but it will likely cover defense
costs. Donahue Aff. in Supp. of Def.'s Opp. to Prelim. Inj. at 6.
Ex. A. However, Livewire has not provided any assurances that it
will be able to satisfy the substantive tax obligations it may
incur as a result of the Indian court's rulings on its appeals.
The total amount due to Indian tax authorities, absent any
success of appeal, is approximately $1,714,668 million. Pls.'
Reply at 8.

On May 30, 2013, Plaintiffs filed a Verified Complaint with
the Middlesex County Superior Court seeking a declaratory
judgment that Livewire is legally obligated to indemnify them for
the Tax Assessment and all costs and expenses that Plaintiffs

---

severally liable for the payment of such tax unless he proves
that the non-recovery cannot be attributed to any gross neglect,
misfeasance or breach of duty on his part in relation to the
affairs of the company."

have incurred relating to that matter. On Monday, June 3, 2013, Livewire filed its Notice of Removal in the instant action seeking to remove the Superior Court action to this Court.

On June 4, 2013, Livewire announced that it had entered into an agreement for the acquisition of substantially all its business assets and certain liabilities by OnMobile Global Limited. Under the terms of the agreement, Livewire will receive $17.8 million for its existing business assets subject to certain escrow and performance contingencies. The transaction is scheduled to close on June 30, 2013. Livewire is financially unstable and has significant current operating losses.

## III.  DISCUSSION

A district court faced with a motion for a preliminary injunction must weigh four factors: (1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendant less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest. Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc., 704 F.3d 44, 48 (1st Cir. 2013). A preliminary injunction is a "potent weapon that should be used only when necessary to safeguard a litigant's legitimate interests." Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 163 (1st Cir. 2004). The party seeking the injunction

bears the burden of demonstrating each factor. See <u>Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70</u>, 415 U.S. 423, 441 (1974).

## A.   Likelihood of Success on the Merits

To establish a likelihood of success on the merits, the district court need only determine the "probable outcomes" of the underlying claims. <u>Maine Educ. Ass'n Benefits Trust v. Cioppa</u>, 695 F.3d 145, 158 (1st Cir. 2012). Plaintiffs have made two claims for relief: one for a declaratory judgment that Livewire is required to indemnify them for the Indian tax assessment and the other for a breach of covenant of good faith and fair dealing under their employment contracts. The Court finds that the Plaintiffs are likely to prevail on their indemnity claim.

Under Indian law, employees, as agents, are entitled to be indemnified for lawful acts done in the exercise of their employer's authority. Section 222 of the Indian Contracts Act of 1872 provides:

> Agent to be indemnified against consequences of lawful acts. - The employer of an agent is bound to indemnify him against the consequences of all lawful acts done by such agent in exercise of the authority conferred upon him.

Indian Contracts Act, 1872, § 222. There have been no allegations that Ayaz or Chandran acted outside the scope of their employment relationship or committed any unlawful acts in the performance of

their duties at NMS India.[4] Therefore, the Court finds that there is a likelihood of success on the merits for their indemnity claim with regard to the tax assessments.

**B.    Irreparable Harm**

The Plaintiffs must demonstrate that there is a "significant risk" of irreparable harm if the injunction is denied. Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). In weighing the nature of the irreparable harm, "the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996).

Defendant argues that any harm in this case is "highly unlikely and speculative" because: there is a chance that the Indian government will grant the Applications for Condonation, hear the appeals, and rule entirely in Defendant's favor. Additionally, Livewire asserts there is a chance that NMS India will pay any liability for a judgment rendered, despite the fact that NMS India is only a "shell" corporation and Livewire is on the brink of selling all of its assets. Defendant also points out that Plaintiffs likely will not be held personally liable because

---

[4] Defendant makes a passing argument that based on the specific tax obligation and the nature of the action against the Plaintiffs, a determination would have to be made whether Livewire, as opposed to NMS India, has a duty to indemnify. This argument is too vague and unsupported to undermine a likelihood of success against Livewire.

there is no evidence that they engaged in "gross neglect,
misfeasance or breach of duty" under Indian Income-Tax Act
§ 179.[5]

     To be sure, the prospect of harm is not certain in this
case. However, that is not the showing Plaintiffs are required to
make. Rather, the First Circuit has held that plaintiffs must
establish a "real threat" of irreparable harm, Matos ex rel.
Matos v. Clinton Sch. Dist., 367 F.3d 68, 73 (1st Cir. 2004),
that is "grounded on something more than conjecture, surmise, or
a party's unsubstantiated fears of what the future may have in
store," Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go,
Inc., 370 F.3d 151, 162 (1st Cir. 2004). See also 11A Charles
Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice
& Procedure § 2948.1 (2d ed. 2013) ("A presently existing actual
threat must be shown. . . . However, the injury need not have
been inflicted when application is made or be certain to
occur.").

     The threat of irreparable harm in this case is real. Tax
liabilities have already been assessed against NMS India and
Plaintiffs have already received formidable warnings that the
Indian government intends on pursuing them personally under
Section 179 of the Indian Income-Tax Act. Defendant makes a

---

[5] The parties have not provided the Court with Indian caselaw
as to how this term has been construed under Indian law in the
context of taxes.

general assertion it believes the Indian tax authorities' claims "lack merit", citing to India's ranking on the Corruption Perception Index as support. Decl. Gerritsen in Supp. of Def.'s Opp. to Emer. Mot. at 10. Plaintiffs have provided some evidence to assess whether the legal challenges to the tax assessments will turn out to be successful. JCSS predicted success on a portion of the tax assessment if consideration is allowed. Final assessment orders have been issued, which puts Livewire behind the eight-ball. Plaintiffs specify a maximum potential liability (excluding legal fees) of $1,714,668.[6]

It is not enough to show a "viable threat" of harm; Plaintiffs must also make a showing that they have no other legal recourse or that the impending harm "cannot be undone." Massachusetts Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness of Com. of Massachusetts, 649 F.2d 71, 74 (1st Cir. 1981). Here, Defendant has presented no evidence that any funds will be left in Livewire to satisfy its Indian tax obligations after appeal or to cover any deposit Plaintiffs required to make to contest their personal liability. The June 30 sale will deplete nearly all of its assets and there is no current plan to allocate money into escrow for

---

[6] This amount includes penalties based on the Indian Deputy Commission of Income Tax Assessing Officer's 100% penalty assessment for the fiscal year 2007-2008 and the JCSS opinion that a 100% penalty will likely be enforced for the fiscal years 2006-2007 and 2008-2009.

these tax obligations. Additionally, the Directors and Officers insurance Livewire carries explicitly denies coverage for any tax liabilities, although it does apparently cover Plaintiffs' defense costs. Donahue Aff. in Supp. of Def.'s Opp. to Prelim. Inj. at 6. Ex. A at § 13. Moreover, according to Plaintiffs, Livewire has possession of the documents necessary for them to establish lack of their malfeasance. Therefore, there is a real threat that Plaintiffs will be on the hook for $1,714,668 in tax assessments, penalties and interest that have already been declared.

The First Circuit has held that "a preliminary injunction, designed to freeze the status quo and protect the damages remedy is an appropriate form of relief when it is shown that the defendant is likely to be insolvent at the time of judgment." Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 52 (1st Cir. 1986) (citing Deckert v. Independence Shares Corp., 311 U.S. 282 (1940)). The Supreme Court in Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999) subsequently held that a district court does not have the authority to enter a preliminary injunction freezing assets pending the adjudication of an action brought solely at law; rather, the relief sought must "have a basis in the traditional powers of equity courts." Id. at 327-27. In interpreting Grupo, the First Circuit has held that where a party asserts a "preexisting lien" or "equitable

interest" in its claim for money damages, a preliminary injunction may be appropriate. <u>Charlesbank Equity Fund II v. Blinds To Go, Inc.</u>, 370 F.3d 151, 159 (1st Cir. 2004) (post-<u>Grupo</u>). The First Circuit has upheld preliminary injunctions in cases where plaintiffs assert a claim based on traditional equitable principles. <u>See e.g.</u>, <u>Iantosca v. Step Plan Servs., Inc.</u>, 604 F.3d 24, 33 (1st Cir. 2010) (holding that where a creditor has a judgment against a debtor and can make a "colorable claim" that the debtor's funds have been fraudulently conveyed to other entities, "the creditors do have a claimed lien interest to support [a] preliminary injunction" to freeze assets transferred to the other entities).

In this case, Plaintiffs assert a claim for indemnification, a right that arises in equity. 31 Mass. Prac., <u>Equitable Remedies</u> § 20.3 (3d ed. July 2013) (noting that "historically . . .[a claim for indemnification] could be exercised at law or in equity."). <u>See also</u> Jacob A. Stein, Stein on Personal Injury Damages § 14:49 (3d ed. 2013) (stating that the "right to indemnity which arises by operation of law is an equitable doctrine. It is based upon the belief that where one party, whose fault is passive or secondary, incurs liability because of another party, whose fault is active or primary, the passive party should be allowed to recover from the active party for the liability paid. To require the passive party to bear the loss

13

would be inequitable."). As such, a preliminary injunction would
be appropriate under Grupo.

###    C.    Balance of Harms and Public Interest

Both remaining factors weigh in favor of granting the
preliminary injunction. First, Defendant has cited no hardship
that it would endure if required to place $1,714,668 million of
the proceeds from the $17.8 million sale into escrow to satisfy
future Indian tax obligations. Plaintiffs, on the other hand,
would suffer a financial blow if they were held personally liable
and, as the only former directors remaining in India, would be
the only ones to face immediate attachment of their property and
bank accounts. Further, the public has an interest in
corporations protecting officers and directors from shouldering
tax liabilities that the corporation should be paying itself.
There is also a public interest in ensuring that tax obligations,
even those payable to foreign governments, are not avoided. See
Convention on Mutual Administrative Assistance in Tax Matters.

###    D.    Jurisdiction

Both Plaintiffs and Defendant agree that the court has
jurisdiction. However, it is unclear to me that the Tax Treaty
provides jurisdiction, as Defendant asserts in the removal
petition, or that the parties are diverse. See D.B. Zwirn Special
Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 126 (1st Cir.
2011) (noting that "United States citizens who are domiciled

14

abroad are citizens of no state" and consequently "their 'stateless' status destroys complete diversity under § 1332(a)(3), and their United States citizenship destroys complete diversity under § 1332(a)(2)." ) (internal quotations and citation omitted). Briefing should be submitted within fourteen days as to jurisdiction.

### IV. ORDER

The Court **ALLOWS** Plaintiffs' motion for a preliminary injunction (Docket No. 6) and orders that $1,714,668[7] million shall be deposited in the court upon completion of the sale during the pendency of this lawsuit.[8]

/s/ PATTI B. SARIS
PATTI B. SARIS
Chief, U.S.D.J.

---

[7] I decline the request to deposit legal fees as plaintiffs have not demonstrated a significant risk of irreparable harm as to them.
[8] No bond was requested.

15