## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
                              )
JAWAD AYAZ and VINOD CHANDRAN )
                              )
          Plaintiffs,         )     Civil Action No. 13-cv-11330
                              )
     v.                       )
                              )
LIVEWIRE MOBILE, INC.         )
                              )
          Defendant.          )
                              )
                              )
```

### MEMORANDUM AND ORDER

July 29, 2013

Saris, C.J.

## I. INTRODUCTION

On May 30, 2013, Plaintiffs Jawad Ayaz and Vinod Chandran filed a complaint in the Middlesex Superior Court asserting two claims under state law. The first regards Plaintiffs' right to be indemnified for Indian tax liabilities incurred by Livewire's subsidiary and the second is a contract claim. Defendant removed the case, asserting that the Convention on Mutual Administrative Assistance in Tax Matters ("Tax Treaty") provided a basis for federal question jurisdiction under 28 U.S.C. § 1331. (Docket No. 1). Plaintiffs disagreed that the Tax Treaty applied, but asserted that the Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendant disagrees that the Court has diversity

1

jurisdiction.  As such, both parties agree that the Court has subject matter jurisdiction but disagree on the basis.  On June 27, 2013, this Court issued an order allowing Plaintiffs' motion for preliminary injunction. (Docket No. 39). In its order, the Court *sua sponte* raised the question of whether it had subject matter jurisdiction and ordered the parties to brief the issue. Both parties submitted briefs. Defendant subsequently appealed the preliminary injunction order. (Docket No. 54).

After reviewing the parties' briefs and supporting documents, the Court holds that it does not have subject matter jurisdiction and **REMANDS** this case to state court.

## II. FACTUAL BACKGROUND

When evaluating the existence of subject matter jurisdiction, the court conducts a "broad inquiry" and may consider extrinsic materials, including evidentiary materials submitted by the parties and other pleadings. Hernandez-Santiago v. Ecolab, Inc., 397 F.3d 30, 33 (1st Cir. 2005) (internal citations omitted). Review of documents outside the complaint is appropriate when such documents are "pertinent to the jurisdictional inquiries that the district court [is] obliged to conduct . . . ." Coyne v. Cronin, 386 F.3d 280, 286 (1st Cir. 2004) (internal citation omitted).

Plaintiffs' counsel initially represented to the Court that Plaintiffs were domiciled in India. Mot. Hr'g Tr. 2:21-23, June

5, 2013.[1] Early submissions by Plaintiffs and their supplemental briefing support that they have been engaged in full time employment activity in India. Further, their employment contracts with Livewire list Indian addresses as their residences. Def.'s Mot. Dismiss Ex. A, Ex. B. The record also reflects that Plaintiffs have significant personal assets located in India. In asserting that Plaintiffs would be irreparably harmed were they held responsible for Livewire's Indian tax liabilities, counsel stated that there was a "real concern here that the government of India is going to levy and sell upon their families' homes and cars." Id. at 40:16-19. Plaintiffs also cited the concern that Indian tax authorities would "draw upon their personal bank accounts" to satisfy the liabilities. Mem. in Supp. Pls.' Emerg. Mot. TRO 9. Plaintiffs' counsel has been adamant that it is Plaintiffs' presence in India that makes them so vulnerable to the Indian tax collections. Id. at 48:16-19 ("The reason why [the Indian Government is] going so hard after our guys is because they're the only ones who are left in India."). Both Ayaz and Chandran are Indian nationals. Mot. Hr'g Tr. 4:6-7.

In their supplemental briefing on the Court's jurisdiction, Plaintiffs sang a different tune. Plaintiffs submitted affidavits and other evidence suggesting that they were domiciled in Texas,

---

[1] Specifically, counsel stated: "Mr. Ayaz and Mr. Chandran are both United States citizens who currently are domiciled in the Republic of India."

not India. Their submissions support the following facts.
Chandran has lived in India for the past 19 years, before which
he lived in Texas from 1985-1994. While in Texas, Chandran
graduated with a Master's Degree in Industrial Engineering from
the University of Texas in 1986. He subsequently worked for
Nortel Networks in Texas, where he first met Ayaz. In 1994,
Plaintiffs founded a business in Texas and Chandran went to India
to assist a United States corporation contracting with their
Texas-based company. Chandran asserts that "[m]y initial
assignment and certain subsequent assignments resulted in my
staying in India much longer than anticipated." Chandran Jurisd.
Aff. ¶ 8. Chandran states that "Eventually, my wife and I decided
to remain in India temporarily until my children graduated high
school at which point we would send them to college in the United
States and we would return to live in Texas." Id.

During his time in India, Chandran retained a valid Texas
driver's license. Chandran is also a registered voter of Harris
County, Texas, and participated in the 2012 Presidential
election. He has consistently maintained a bank account and
brokerage account with banks based in Texas. Chandran is also the
trustee of a trust organized under the laws of Texas. Chandran
has remained a U.S. citizen while living in India, which requires
he pay U.S. federal taxes during his stay in India on global
income. Chandran has some family members in Texas and his oldest

4

child is currently enrolled at the University of Maryland.

Ayaz has lived in India for the past 12 years, before which he lived in Texas from 1987-2001. Ayaz graduated with a Master's Degree in Electrical Engineering in 1989 from the University of Texas. He subsequently worked for Nortel Networks, where he first met Chandran. Ayaz then moved to India on a "temporary assignment" that led to "subsequent similar assignments for other United States corporations . . . all of which required me to manage their technology operations in India much longer than originally anticipated." Ayaz Jurisd. Aff. ¶ 5. Ayaz and his wife then "decided to remain in India temporarily until [their] children graduated high school and started college in the United States, at which point [they] would return to live in Texas." Id.

Ayaz has maintained a Texas driver's license which expired in 2012. He is a one-third owner of a business that owns property in Texas. Ayaz has also maintained a bank account at a Texas bank branch, a brokerage account in Texas, and is the trustee and a beneficiary of a trust established under Texas law. Ayaz has formed a business under Texas law with bank and brokerage accounts in Texas. The business purchases goods in the United States for export to India. Ayaz is also a registered voter of Collin County, Texas. Like Chandran, Ayaz has also remained a U.S. Citizen and has paid federal taxes on global income. Ayaz's oldest child is also currently attending college in the United

States and he has many family members in Texas.

### III. DISCUSSION

**A.   Effect of Preliminary Injunction Appeal**

The threshold issue is whether the Court may proceed with the case while the appeal of the preliminary injunction is pending. In Contour Design, Inc. v. Chance Mold Steel Co., Ltd., 649 F.3d 31, 34 (1st Cir. 2011), the First Circuit held that "[a]n appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending." Id. (citing 11A Wright & Miller, Federal Practice and Procedure § 2962 (2d ed. 1995). Therefore, the Court may proceed with the case.

**B.   Legal Standard for Review of Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction and the requirement of subject-matter jurisdiction "functions as a restriction on federal power." Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (internal citations and quotations omitted). The existence of subject-matter jurisdiction "is never presumed." Id. Rather, a court has an obligation to inquire sua sponte into its own subject matter jurisdiction. McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004). Under Fed. R. Civ. P. 12(h)(3), "If the court determines at any time that it lacks subject-matter

jurisdiction, the court must dismiss the action."

When a case is removed, a district court must have subject matter jurisdiction in order for the case to remain in federal court. See 28 U.S.C. §§ 1441(a), 1447(c). District courts may exercise jurisdiction if the case arises under federal law, 28 U.S.C. § 1331 ("§ 1331"), or if the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a) ("§ 1332"). A party seeking to remove a case "bears the burden of persuasion vis-à-vis the existence of federal jurisdiction." BIW Deceived v. Local S6, 132 F.3d 824, 831 (1st Cir. 1997). The removal statute is strictly construed. Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).

**C.   Subject Matter Jurisdiction**

**1.   Federal Question**

Federal district courts have original jurisdiction over "federal question" cases. A federal question "aris[es] under the Constitution, laws, or treaties of the United States." § 1331; Vigueira v. First Bank, 140 F.3d 12, 17 (1st Cir. 1998). A case arises under federal law for purposes of § 1331 if "a well-pleaded complaint establishes that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Empire Healthchoice Assur., Inc. v. McVeigh, 547

7

U.S. 677, 690 (2006) (internal citation omitted). Section 1441(a) "authorizes removal only by defendants and only on the basis of claims brought against them . . . ." <u>Ballard's Serv. Ctr., Inc. v. Transue</u>, 865 F.2d 447, 449 (1st Cir. 1989).

Plaintiffs' complaint raises only state law claims. While acknowledging that the issue of subject matter jurisdiction is a matter of "first impression," Defendant insists that Plaintiffs' legal claims "necessarily involve . . . the Convention on Mutual Administrative Assistance in Tax Matters." Def. Br. 2. Defendant argues that an exception to the "well-pleaded complaint" rule applies, under which a federal court may have jurisdiction over a "state-law cause of action that contains an embedded question of federal law that is both substantial and disputed." <u>Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Dep't Of Envtl. Mgmt.</u>, 585 F.3d 42, 48 (1st Cir. 2009) (quoting <u>Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308 (2005)). The First Circuit has cautioned that this basis for jurisdiction is "controversial" and is one that "should be applied with caution and various qualifications." <u>Almond v. Capital Properties, Inc.</u>, 212 F.3d 20, 23 (1st Cir. 2000).

The "embedded federal question" exception is not applicable in this case. Defendants have not demonstrated why resolution of Plaintiffs' state law claims requires the Court address a "substantial" or "disputed" federal question regarding the Tax

Treaty. <u>Fishermen's Alliance</u>, 585 F.3d at 49 (emphasis added)
(stating that under the "embedded federal question" exception,
the "most pressing concern" is "whether the plaintiffs' well-
pleaded complaint *necessarily* raises a federal question.").
Plaintiffs' claims raise only state law questions. Defendant
points out that legal issues could arise under the treaty if
India seeks to recover taxes against a taxpayer, like seizure or
freezing assets.  For example, Liverwire hypothesizes that the
treaty ensures taxpayers the right to a "proper procedure"; while
the meaning of the treaty can be implicated, the state law claims
at issue here (i.e., the right to indemnity) do not necessarily
raise a federal question.  Since the Tax Treaty is neither
explicitly referenced in the complaint nor implicitly required
for its resolution, the Court finds that there is no federal
question.

### 2. Diversity Jurisdiction

Livewire is a Delaware corporation with its principal place
in Massachusetts. Plaintiffs are Indian residents who live in
India, but are also United States citizens. United States
citizens who are domiciled abroad are citizens of no state and
their "'stateless' status destroy[s] complete diversity" under
§ 1332(a). <u>D.B. Zwirn Special Opportunities Fund, L.P. v.
Mehrotra</u>, 661 F.3d 124, 126 (1st Cir. 2011). Plaintiffs counsel
initially represented to the Court that Plaintiffs were domiciled

in India. However, after the Court issued the preliminary

injunction and ordered the parties to brief the question of

jurisdiction, Plaintiffs instead argued that they were domiciled

in Texas.[2]

Given the Plaintiffs' stark change in position, the Court

finds that the doctrine of judicial estoppel is applicable.

Judicial estoppel is an equitable doctrine that "prevents

a litigant from pressing a claim that is inconsistent with a

position taken by that litigant either in a prior legal

proceeding or in an earlier phase of the same legal proceeding."

Boston Gas Co. v. Century Indem. Co., 708 F.3d 254, 261 (1st Cir.

2013) (citing InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir.

2003). The doctrine's primary purpose is to "protect the

integrity of the judicial process." Id. The First Circuit has

held that two conditions must be satisfied for judicial estoppel

to attach: "First, the estopping position and the estopped

position must be directly inconsistent, that is, mutually

exclusive. Second, the responsible party must have succeeded in

persuading a court to accept its prior position." Id. (internal

citations and quotations omitted).

Plaintiffs' counsel asserted in oral argument that

---

[2]   Indeed, as Liverwire points out, because it is a local
defendant, 28 U.S.C. § 1441(b) would have prohibited it from
removing the action on diversity grounds even if there were
diversity.

Plaintiffs were domiciled in India. Plaintiffs made much of the fact that they were the only members of Livewire's subsidiary's board of directors who remained in India and had homes, cars, and bank accounts that were subject to attachment by the Indian government. The Court relied on these statements in assessing the irreparable harm prong of its preliminary injunction analysis, understanding that Plaintiffs would be "on the hook" over $1.7 million in tax assessments because they were domiciled in India. After the Court issued the injunction and raised the question of its jurisdiction, Plaintiffs changed their argument. The fact that Plaintiffs were domiciled in India and likely faced personal liability in India because of domicile there was persuasive evidence in assessing the four factors in issuing a preliminary injunction, i.e., irreparable harm. Plaintiffs' new position is inconsistent with its old one. Therefore, the Court finds that the Plaintiffs are estopped from arguing that they are domiciled in Texas.

Even if judicial estoppel did not apply, Plaintiffs have not sufficiently demonstrated that they are domiciled in Texas such that diversity jurisdiction is appropriate. For diversity purposes, a person is a citizen of the state in which he is domiciled. Padilla-Manqual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008). Domicile is defined as "the place where [one] has his true, fixed home and principal establishment, and to which,

whenever he is absent, he has the intention of returning."
Rodriquez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1029 (1st Cir.
1988). A person can have only one domicile at a time. Valentin v.
Hosp. Bella Vista, 254 F.3d 358, 367 (1st Cir. 2001). Domicile
generally requires two elements: 1) physical presence in a state,
and 2) the intent to make such a state a home. Rodriquez-Diaz v.
Sierra-Martinez, 853 F.2d 1027, 1029 (1st Cir. 1988) (internal
citation omitted). To "effect a change in [one's] domicile"
requires a similar showing that one is: "present in the new
domicile" and "intend[s] to remain there." Bank One, Texas, N.A.
v. Montle, 964 F.2d 48, 50 (1st Cir. 1992). There is a
presumption of continuing domicile and until a new domicile is
acquired, "the established one continues . . . ." Hawes v. Club
Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979).
Plaintiffs are currently physically present in India. However,
they assert that they are actually domiciled in Texas because
they were once domiciled in Texas and they have never changed
their domicile to India. Plaintiffs bear the burden of proving
domicile in Texas by a preponderance of the evidence. Garcia
Perez v. Santaella, 364 F.3d 348, 351 (1st Cir. 2004). Courts
typically take into account a variety of factors in considering
one's domicile, including "current residence; voting registration
and voting practices; location of personal and real property;
location of brokerage and bank accounts; membership in unions,

fraternal organizations, churches, clubs and other associations; place of employment or business; driver's license and other automobile registration; [and] payment of taxes . . . ." <u>Garcia Perez v. Santaella</u>, 364 F.3d 348, 351 (1st Cir. 2004).

Some of these factors weigh in Plaintiff's favor, namely, Plaintiffs' voter registration and practices, maintenance of a Texas driver's license and some financial accounts, and payment of global taxes. However, the evidence in the record shows that Plaintiffs likely changed their domicile to India upon moving. In their briefing, Plaintiffs submitted no information regarding their personal property, bank accounts, voter registration, automobile registration or civic involvement in India.[3] However, past pleadings and representations to the Court have demonstrated that Plaintiffs were particularly concerned about the Indian government's seizure of their homes, cars, and bank accounts. Further, Plaintiffs Chandran and Ayaz have resided in India for 19 and 12 years, respectively. They have raised their families in India and their children have attended Indian primary schools. They have worked in India, signing employment contracts with companies such as Livewire and listing an Indian address as their residence. They appear to still be engaged in work in India. While Plaintiffs say they do not intend to stay in India forever,

---

[3] Neither party requested an evidentiary hearing on the issue of jurisdiction.

13

"[i]t is not required that the intention be to stay there permanently." Hawes v. Club Ecuestre, 598 F.2d at 701. A "'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile." Id.; See also Valentin v. Hosp. Bella Vista, 254 F.3d 358, 367 (1st Cir. 2001) (stating that "'a mere detached, indefinite and ambulatory future intention to possibly or probably effect a change of domicile . . . is of no real significance' in solving the jurisdictional riddle.") (internal quotations omitted). Therefore, the Court finds that Plaintiffs' extended physical presence in India, together with their statements to this Court regarding their deep ties to India like their family and employment situations, demonstrates that it is India, not Texas, that is their domicile.

Since the Court finds that Plaintiffs are domiciled abroad, their "stateless" citizenship destroys diversity.

### D.   Attorney's Fees for Cost of Removal

Plaintiffs request that the Court order Defendant to reimburse them for all costs and expenses incurred as a result of the removal under 28 U.S.C. § 1447(c). Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." In interpreting this provision, the Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the

14

removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). The First Circuit has not defined what constitutes "objectively reasonable" grounds for removal, though many district courts have declined to award fees unless the facts are "so one-sided as to have made remand a foregone conclusion." See, e.g., Youtsey v. Avibank Mfg., Inc., 734 F. Supp. 2d 230, 239 (D. Mass. 2010).

Defendant's invocation of the Tax Treaty as the basis for removal when Plaintiffs raised only state law claims in their complaint is objectively unreasonable. However, remand was not a foregone conclusion, as evidenced by Plaintiffs' own argument that the Court had subject matter jurisdiction based on diversity jurisdiction. Moreover, there is no evidence of any additional costs or fees resulting from removal. In these circumstances, the Court finds that Plaintiffs are not entitled to attorneys' fees and costs under § 1447(c).

## IV. ORDER

The action is hereby **REMANDED** to state court. The Court orders that the preliminary injunction remain in effect for 30 days after remand so that the state court has time to make an independent ruling.

/s/ PATTI B. SARIS

15

PATTI B. SARIS
Chief, U.S.D.J.